SULLIVAN, HILL, LEWIN, REZ & ENGEL
A Professional Law Corporation
James P. Hill, CA SBN 90478 (Pro Hac Vice)
John R. Heisner, CA SBN 55716 (Pro Hac Vice)
Elizabeth E. Stephens, NV SBN 5788
228 South Fourth Street, First Floor
Las Vegas, NV 89101
Telephone: (702) 382-6440
Fax Number: (702) 384-9102

Attorneys for Plaintiff, William A. Leonard, Jr.,
Chapter 7 Trustee

**Electronically Filed: September 4, 2012**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>DIPAK DESAI,<br><br>Debtor. | CASE NO. BK-S-10-13050-MKN<br><br>Chapter 7 |
| WILLIAM A. LEONARD, JR., Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>AAA Om Financial, LLC, a Nevada limited liability company; Amishi Desai; Anjali Desai; Avani Bhambri; Om Sai Ram, a Nevada irrevocable life insurance trust; Trustee of Om Sai Ram, a Nevada irrevocable life insurance trust; Om Sai Ram II, a Nevada irrevocable life insurance trust; and Trustee of Om Sai Ram II, a Nevada irrevocable life insurance trust,<br><br>Defendants. | ADV. NO.<br><br>**TRUSTEE'S COMPLAINT:**<br><br>**(1) TO AVOID AND RECOVER FRAUDULENT TRANSFERS;**<br><br>**(2) TO ENJOIN FURTHER TRANSFERS;**<br><br>**(3) TO IMPOSE CONSTRUCTIVE TRUSTS;**<br><br>**(4) TO IMPOSE EQUITABLE LIENS;**<br><br>**(5) TO AVOID UNJUST ENRICHMENT;**<br><br>**(6) FOR ALTER EGO LIABILITY; AND**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Ctrm: MKN - Courtroom 2<br>Foley Federal Building<br>300 Las Vegas Blvd. South<br>Las Vegas, NV 89101<br>Judge: Hon. Mike K. Nakagawa |

Trustee William A. Leonard, Jr., ("Plaintiff"), the Chapter 7 Trustee of the bankruptcy estate of Dr. Dipak Desai ("Debtor"), hereby files this complaint against AAA Om Financial, LLC ("AAA

Om"), a Nevada limited liability company; Amishi Desai; Anjali Desai; Avani Bhambri; Om Sai Ram ("Om Sai Ram I"), a Nevada irrevocable life insurance trust, the trustee of Om Sai Ram I; Om Sai Ram II ("Om Sai Ram II"), a Nevada irrevocable life insurance trust and the trustee of Om Sai Ram II (collectively "Defendants"), to avoid and recover fraudulent transfers pursuant to 11 U.S.C. §§ 544 and 550 and Nev. Rev. Stat. 112.180(1), 112.200, 112.210(1)(a) and 112.220(2); to enjoin the transfer of property received by fraudulent transfer pursuant to 11 U.S.C. § 105(a), Federal Rule of Bankruptcy Procedure 7065, Federal Rule of Civil Procedure 65, Nev. Rev. Stat. 112.210 and Nevada Rule of Civil Procedure 65; to impose constructive trusts, equitable liens, and alter ego liability pursuant to Nevada law; and to avoid unjust enrichment pursuant to Nevada law. Plaintiff demands a trial by jury on all claims for relief.

By this complaint, Plaintiff seeks to avoid transfers made by Debtor to his daughters and to other related and affiliated entities—all of whom and which are insiders of the Debtor as defined by 11 U.S.C.§ 101(31) as well as the alter-egos and agents of one another and the Debtor, and were acting within the scope of such agency during the time the Debtor made such transfers of substantially all of Debtor's property, in the approximate sum of $12,850,000, subject to proof at trial, (1) without Debtor receiving reasonably equivalent value in exchange for such transfers; (2) while the Debtor was engaged in or about to engage in the administration of reckless and grossly negligent medical procedures for which his assets were unreasonably insufficient to compensate his victims; and (3) at a time when the Debtor intended to incur, believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. In support of this complaint, Plaintiff respectfully alleges as follows:

## I.

## JURISDICTION

1. This Court and the District Court for the District of Nevada have jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This action is commenced pursuant to sections 544 and 550 of the Bankruptcy Code (11 U.S.C. § 101 *et seq*.) and Federal Rule of Bankruptcy Procedure 7001.

/ / /

2. This action (1) relates to the underlying bankruptcy case of In re Dipak Desai, Case No. BK-S-10-13050-MKN, presently pending in the United States Bankruptcy Court for the District of Nevada, and (2) is a core proceeding as set forth in 28 U.S.C. §157(b)(2)(A), (E), (H) and (O) in that it seeks the determination, avoidance, and recovery of fraudulent transfers and turnover of property of the estate. This Court may hear and determine the instant proceeding and enter appropriate orders pursuant to 28 U.S.C. § 157(b)(1) and (2); provided, however, that the District Court for this District may be required to hear and determine final judgment following a jury trial as requested by Plaintiff and all matters related to and leading to entry of final judgment.

3. To the extent that Plaintiff asserts claims under section 544(b) of the Bankruptcy Code, Plaintiff is informed and believes, and based thereon alleges, that there exists in this case one or more creditors holding unsecured claims allowable under section 502 of the Bankruptcy Code, who can avoid the respective transfers or obligations under Nevada or other applicable law.

## II.

## PARTIES

4. On or about February 26, 2010, Debtor, acting through his wife Kusum Desai ("Mrs. Desai"), who exercised ostensible authority pursuant to a Springing Durable Power of Attorney on behalf of the Debtor, filed and signed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

5. Plaintiff is informed and believes and thereon alleges that Debtor is an individual who at all times relevant resided in Clark County, Nevada.

6. On April 6, 2011, this Court converted the Chapter 11 proceeding to a case under Chapter 7 of the Bankruptcy Code. On April 7, 2011, Plaintiff was duly appointed and is currently acting as the Chapter 7 Trustee of the Desai bankruptcy estate.

7. Plaintiff is informed and believes and thereon alleges that Defendants Amishi Desai, Anjali Desai, and Avani Bhambri ("Daughters") are the daughters of Debtor.

8. Plaintiff is informed and believes and thereon alleges that Defendant AAA Om is a limited liability company organized under the laws of the State of Nevada and at all times alleged herein was doing business in Nevada.

9. Plaintiff is informed and believes and thereon alleges that, Defendant Om Sai Ram I is an irrevocable life insurance trust formed under the laws of the State of Nevada.

10. Plaintiff is informed and believes and thereon alleges that Defendant Om Sai Ram II is an irrevocable life insurance trust formed under the laws of the State of Nevada and a 100 percent owner of AAA Om.

**III.**

**ALLEGATIONS**

**A. <u>Transfers without Receipt of Reasonably Equivalent Value in Exchange</u>.**

11. Plaintiff is informed and believes, and based thereon alleges, that during the four years preceding the bankruptcy filing, Debtor transferred substantially all of his assets to Defendants without receiving reasonably equivalent value in exchange for the transfers, as more fully described *infra*.

**1. <u>Gifting Assets through Sharda Trust and Hari Om Limited Partnership</u>.**

12. Plaintiff is informed and believes and thereon alleges that in 1993, Debtor created the Sharda Trust, a self-settled revocable trust. Debtor transferred approximately 90 percent of his and Mrs. Desai's assets into the Sharda Trust. Up until the date of his bankruptcy filing, Debtor served as the trustee of the Sharda Trust.

13. Plaintiff is informed and believes and thereon alleges that, in or about 1993, Debtor formed Hari Om Limited Partnership ("Hari Om"). At all times relevant herein, Debtor was a general partner of Hari Om. At all times relevant herein, Om Sai Ram I was also a general partner of Hari Om. At all times relevant herein, the Sharda Trust and the Daughters were limited partners of Hari Om.

14. During the period between 1993 and approximately 2005, Debtor used the corporate shell of Hari Om to make ostensible gifts purporting to transfer approximately 90 percent of the assets he held in the Sharda Trust to his Daughters. The cumulative value of the purported gifts was approximately $5,000,000 to $10,000,000. Debtor ostensibly transferred these valuable assets to take advantage of his Daughters' lower income tax brackets and also to shield his assets from the reach of creditors. His Daughters used their purported gifts to purchase at least on paper asserted

ownership units in Hari Om. The Daughters presently own at least on paper 90 percent of the Hari Om ownership units, all of which remain under the management and control of the Debtor.

15. At all times relevant herein, Debtor has treated the funds within Hari Om as his own personal funds, including by making withdrawals of funds from Hari Om to make personal investments. Debtor has also withdrawn funds from Hari Om to pay his personal legal fees for pre-bankruptcy planning and for his legal defense in multi-million dollar civil lawsuits. Debtor neither paid back Hari Om for these withdrawals nor executed promissory notes promising repayment.

**2. Setting up Limited Liability Clinics.**

16. Plaintiff is informed and believes and thereon alleges that (a) in or about 1993, the Debtor formed the Endoscopy Center of Nevada, Ltd. ("ECN"), a Nevada corporation; and (b) the Debtor thereafter purported to gift his ownership interest in ECN to his Daughters.

17. In or about 2002, upon Debtor's decision to do so, ECN wound down its business and sold its assets, equipment, and medical supplies and dissolved in 2004. During that wind down and dissolution, Debtor formed the Endoscopy Center of Southern Nevada, LLC ("ECSN") and the Endoscopy Center of Southern Nevada II, LLC in 2002, the Gastroenterology Center of Nevada, LLC in 2003, the Spanish Hills Surgical Center, LLC in 2004 and the Desert Shadow Endoscopy Center, LLC in 2005 (collectively "Clinics"). Debtor subsequently sold ECN's assets, equipment and medical supplies to the Endoscopy Center of Southern Nevada, LLC. Plaintiff is informed and believes and thereon alleges that Debtor exercised management control of the Clinics at all relevant times. On approximately April of 2008, the Clinics ceased operations.

18. In or about 1999 until 2007 or 2008, the Debtor managed ECN and the Clinics under the guise of being a general partner of Hari Om pursuant to management agreements. Hari Om received approximately $120,000 in fees per year for services allegedly provided for the Clinics. Until July of 2008, Debtor was essentially the only person in control of Hari Om and used its assets for his own purposes.

/ / /

/ / /

/ / /

**3. <u>Funneling Assets into Irrevocable Trusts</u>.**

19. Plaintiff is informed and believes and thereon alleges that, in or about 2003, Debtor formed Defendant Om Sai Ram I, an irrevocable life insurance trust, under the laws of the State of Nevada.

20. Plaintiff is informed and believes and thereon alleges that, Debtor contributed all of the capital necessary to fund and start up Om Sai Ram I. Because Om Sai Ram I was or is an irrevocable trust, Debtor caused Om Sai Ram I to become a general partner of Hari Om.

21. Plaintiff is informed and believes and thereon alleges that, in or around 2003, Debtor formed AAA Om. The Daughters are the only members. The Daughters transferred their respective ownership interests in ECSN to AAA Om as their respective capital contributions. At all times relevant, Debtor served as the sole manager of AAA Om. At all times relevant, Debtor served as the sole managing member of AAA Om and controlled AAA Om's financial affairs and business operations. Debtor funded AAA Om with distributions from the Clinics that were made in accordance with his ownership interest in the Clinics. In or about 2006 or 2007, Debtor used AAA Om for the sole purpose of funding the life insurance policy on his life owned by Om Sai Ram II.

22. Plaintiff is informed and believes and thereon alleges that, in or around 2005, Debtor caused Om Sai Ram I to be divested of its ownership interest in Hari Om by transferring a payoff of a promissory note due Om Sai Ram I in the approximate sum of $350,000 to $400,000. Om Sai Ram I is presently valued at approximately $50,000.

23. Plaintiff is informed and believes and thereon alleges that, in or around 2005, Debtor formed Defendant Om Sai Ram II, an irrevocable life insurance trust, under the laws of the State of Nevada. Debtor formed Om Sai Ram II to purchase the life insurance held by Om Sai Ram I and to provide protection to Debtor and his Daughters from creditors. Om Sai Ram II acquired a 100 percent interest in AAA Om by executing a $3,500,000 promissory note in favor of the Daughters. By virtue of its 100 percent interest in AAA Om, Om Sai Ram II is presently valued at approximately $1,000,000.

/ / /

/ / /

**B. <u>Continued Exercise of Control over Transferred Assets & Concert of Action</u>.**

24. Plaintiff is informed and believes, and based thereon alleges that, notwithstanding the alleged and purported transfers described in paragraphs 12 through 22, Debtor continued to exercise actual ownership and control over the property purportedly transferred by, among other things, his withdrawing funds from AAA Om, Om Sai Ram I, and Om Sai Ram II for his personal investments and his personal legal representation in lawsuits unrelated to Defendants.

25. Plaintiff is informed and believes, and based thereon alleges that, notwithstanding the alleged and purported transfers described in paragraphs 12 through 22, Defendants did not exercise ownership and control over the property transferred, but instead acquiesced in Debtor's continued management, ownership and control of such property as if it were his own property.

26. Plaintiff is informed and believes, and based thereon alleges that, notwithstanding the transfers described in paragraphs 12 through 22, at all times relevant hereto, each of the Defendants and Debtor were principals, agents, affiliates, managers, alter-egos, co-venturers, partners, sureties, guarantors, officers, directors or employees of the remaining Defendants with respect to the property transferred and were at all times acting within the scope of such agency, affiliation, management, alter-ego relationship and/or employment.

27. Plaintiff is informed and believes, and based thereon alleges that, notwithstanding the transfers described in paragraphs 12 through 22, at all times relevant hereto, each of the Defendants and Debtor actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged in this Complaint, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each and every violation of Debtor's creditors' rights and the damages to Debtor's creditors proximately caused thereby.

28. Plaintiff is informed and believes, and based thereon alleges, that there exists and, at all times mentioned herein, existed a unity of interest and ownership between and among Defendants and Debtor, such that any individuality and/or separateness between Defendants and Debtor has ceased to exist.

29. Plaintiff is informed and believes, and based thereon alleges, that Defendants were mere shells, instrumentalities and conduits through which Defendants carried on their business for

Debtor's primary, if not sole, benefit. AAA Om, Om Sai Ram I, and Om Sai Ram II were controlled, dominated and operated by Debtor as his individual businesses and alter egos.

30. Plaintiff is informed and believes, and based thereon alleges, that the activities and business of AAA Om was carried out without the Daughters holding member meetings and without carrying out other activities and attributes of true and separate entity existence.

31. Plaintiff is informed and believes, and based thereon alleges, that no contemporaneous records or minutes of regular proceedings and meetings were maintained by Debtor, his Daughters, or AAA Om.

32. Plaintiff is informed and believes, and based thereon alleges, that AAA Om entered into personal transactions with the Debtor without the involvement, approval or oversight of its purported members, the Daughters.

33. Plaintiff is informed and believes, and based thereon alleges, that Defendants and Debtor intermingled their assets and Defendants obtained assets from the Debtor to suit their convenience and to evade payment of taxes, existing and anticipated creditors of Debtor, and other legitimate obligations.

34. Plaintiff is informed and believes, and based thereon alleges, that Defendants used their own assets and those of the Debtor for personal use, and obtained funds from the Debtor's business accounts for their own personal use.

35. Plaintiff is informed and believes, and based thereon alleges, that AAA Om, Om Sai Ram I, and Om Sai Ram II were without sufficient capital or assets to conduct a legitimate business.

**C. Business for Which Debtor's Remaining Assets were Unreasonably Small in Relation to Business & for Which Debtor Intended to Result in, or Believed or Reasonably Should Have Believed Would Result in, Debts Beyond His Ability to Pay.**

36. Plaintiff is informed and believes and thereon alleges that, at the time of the transfers described *supra*, (i) the Debtor was engaged in or about to engage in a business or a transaction for which his remaining assets were unreasonably small in relation to the business or transaction; and (ii) the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

37. Plaintiff is informed and believes and thereon alleges that, at the time of the transfers described *supra*, the Debtor was engaged in or was about to engage in the Reckless Disregard of Persons or Property, Criminal Neglect of Patients, and Murder, as described by Nev. Rev. Stat. 0.060, 200.010, 200.020, 200.030, 200.070, 200.495 and 202.595.

38. Plaintiff is informed and believes and thereon alleges that, at the time of the transfers described *supra*, Debtor was about to engage or was engaging in the willful or wanton disregard of the safety of persons, which resulted in substantial bodily harm to numerous patients, including but without limitation, Michael Washington, Stacy Hutchinson, Rodolfo Meana, Patty Aspinwall, Sonia Orellana-Rivera, Carole Grueskin and Gwendolyn Martin ("the Patients"). Specifically, Debtor was about to engage or was engaging in the following acts, as alleged by the State of Nevada in Case No. 10C265107-1:

> (1) …directly administering and/or directly or indirectly instructing employees of the Endoscopy Center of Southern Nevada, (ECSN) to administer one or more doses of the anesthetic drug Propofol from a single use vial to more than one patient contrary to the express product labeling of said drug and in violation of universally accepted safety precautions for the administration of said drug; and/or (2) …creating an employment environment in which said employees were pressured to administer one or more doses of the anesthetic drug Propofol from a single use vial to more than one patient contrary to the express product labeling of said drug and in violation of universally accepted safety precautions for the administration of said drug; and/or (3) … directly reusing and/or directly or indirectly instructing said employees, and/or creating an employment environment in which said employees were pressured to reuse syringes and/or needles and/or biopsy forceps and/or snares and/or bite blocks contrary to the express product labeling of said items, and/or in violation of universally accepted safety precautions for the use of said items; and/or (4) …directly limiting and/or directly or indirectly instructing said employees, and/or creating an employment environment in which said employees were pressured to limit the use of medical supplies necessary to conduct safe endoscopic procedures; and/or (5) …falsely precharting patient records and/or rushing patients through said endoscopy center and/or rushing patient procedures at the expense of patient safety and/or well being and/or directly or indirectly instructing said employees, and/or creating an employment environment in which said employees were pressured to falsely prechart patient records and/or rush patients through said endoscopy center and/or rush patient procedures at the expense of patient safety and/or well being; and/or (6) …directly or indirectly scheduling and/or treating an unreasonable number of patients per day which resulted in substandard care and/or jeopardized the safety and/or wel1 being of said patients; and/or (7) …directly failing to adequately clean and/or prepare endoscopy scopes, contrary to the express manufacturers guidelines for the handling and processing of said endoscopy scopes, and/or in violation of universal1y accepted safety precautions for the use of said scopes and/or directly or indirectly instructing said employees, and/or creating an employment environment in which said employees were inadequately trained and/or pressured to provide endoscopy scopes for patient procedures that were not adequately cleaned and/or prepared contrary to the express manufacturers guidelines for the handling and processing of said endoscopy scopes, and/or in violation of universal1y accepted safety precautions for the use of said

> scopes.... Defendants [Desai] being responsible under one or more of the following principles of criminal liability, to wit: (1) by directly committing said acts; and/or (2) aiding or abetting each other in the commission of the crime by directly or counseling, encouraging, hiring, commanding, inducing, or procuring each other and/or others to commit said acts, Defendants [Desai] acting with the intent to commit said crime, and/or (3) pursuant to a conspiracy to commit this crime.

*See* Dkt. # 1027 of Case No. BK-S-10-13050-MKN, Exhibit A, pp. 3-4, 8-9, 12-13, 16-17, 20-22, 24-26 and 28-30.

39. Plaintiff is informed and believes and thereon alleges that, at the time of the transfers described *supra*, Debtor was about to engage or was engaging in the acts alleged in paragraph 38 "in an aggravated, reckless or gross manner, failing to provide such service, care or supervision as is reasonable and necessary to maintain the health or safety" of the Patients, "resulting in substantial bodily harm to" the Patients,

> said acts or omissions being such a departure from what would be the conduct of an ordinarily prudent, careful person under the same circumstances that it is contrary to a proper regard for danger to human life or constitutes indifference to the resulting consequences, said consequences of the negligent act or omission being reasonably foreseeable; said danger to human life not being the result of inattention, mistaken judgment or misadventure, but the natural and probable result of said aggravated reckless or grossly negligent act or omission.

*See* Dkt. # 1027 of Case No. BK-S-10-13050-MKN, Exhibit A, pp. 5-6, 9-11, 13-15, 17-19, 22-24, 26-28 and 30-32.

40. Plaintiff is informed and believes and thereon alleges that, at the time of the transfers described *supra*, Debtor was about to engage in or was engaging in the above acts, or acts similar thereto, which resulted in the transmission of hepatitis C to the Patients and death of one patient -- Mr. Meana. At least two of the Patients, Sonia Orellana-Rivera and Michael Washington, have filed claims against the bankruptcy estate for personal injuries sustained from the above-described conduct. *See* Claim Nos. 85 and 92 filed in Case No. BK-S-10-13050-MKN.

41. Plaintiff is informed and believes and thereon alleges that, at the time of the transfers described *supra*, Debtor was about to engage or was engaging in the above acts, which resulted in the exposure to or transmission of communicable diseases. Accordingly, several thousand claimants have filed personal injury lawsuits in the Eighth Judicial District Court for the State of Nevada against Debtor, alleging multi-million dollar damages.

/ / /

42. Plaintiff is informed and believes and thereon alleges that, because of the transfers described *supra*, Debtor was left with unreasonably small assets in relation to the reckless and grossly negligent medical procedures he was conducting, directing, overseeing and/or authorizing at the Clinics.

43. Plaintiff is informed and believes and thereon alleges that Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due as a result of the reckless and negligent medical procedures he was conducting, directing, overseeing and/or authorizing at the Clinics.

44. Plaintiff is informed and believes, and based thereon alleges, that Debtor abused confidence and breached various duties owed to several creditors, including the Patients, by engaging in the acts alleged in paragraphs 23 through 30.

**IV.**

**FIRST CLAIM FOR RELIEF**

(To Avoid and Recover Transfers Fraudulent as to Creditors Whose Claims Arose Before or After Such Transfers- Against All Defendants)

[11 U.S.C. § 544 and Nev. Rev. Stat. 112.180(1)]

45. Plaintiff incorporates herein by reference the allegations in paragraphs 1 though 44, inclusive, as though fully set forth herein.

46. Plaintiff is informed and believes and thereon alleges that, during the period between February 26, 2006 to the Petition Date (the "Four Year Period"), each of the transfers of property by the Debtor to Defendants alleged in paragraphs 12 through 22 became so far perfected that a creditor on a simple contract could not acquire a judicial lien otherwise than under Chapter 112 of the Nevada Revised Statutes that would be superior to the interest of the transferee. In that regard, during the Four Year Period, Debtor transferred, within the meaning of Nev. Rev. Stat. 112.200, property to or for the benefit of the Defendants as follows:

a. Transfers from Debtor to AAA Om in the amount of at least $1,000,000 (the "AAA Om Transfers");

/ / /

b. Transfers from Debtor to Om Sai Ram I in the amount of at least $50,000 (the "Om Sai Ram I Transfers");

c. Transfers from Debtor to Om Sai Ram II in the amount of at least $1,000,000 (the "Om Sai Ram II Transfers");

d. Transfers from Debtor to Amishi Desai in the amount of at least $3,600,000 (the "Amishi Transfers");

e. Transfers from Debtor to Avani Bhambri in the amount of at least $3,600,000 (the "Avani Transfers"); and

f. Transfers from Debtor to Anjali Desai in the amount of at least $3,600,000 (the "Anjali Transfers"; together with the AAA Om Transfers, Om Sai Ram I Transfers, Om Sai Ram II Transfers, Amishi Transfers, and Avani Transfers, the "Transfers").

47. Plaintiff is informed and believes and thereon alleges that the Debtor made the Transfers without receiving reasonably equivalent value in exchange for the transfers.

48. Plaintiffs is informed and believes and thereon alleges that at the time each of the Transfers was made, (i) the Debtor was engaged or was about to engage in a business or a transaction for which his remaining assets were unreasonably small in relation to the business or transaction; and (ii) the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

49. The Transfers constitute fraudulent transfers avoidable by Plaintiff under 11 U.S.C § 544 and Nev. Rev. Stat. 112.180(1)(b) and 112.210(1)(a).

50. Plaintiff is informed and believes and thereon alleges that at the time the Transfers were made, a creditor existed who held an unsecured claim allowable under 11 U.S.C. § 502.

51. Pursuant to 11 U.S.C. §§ 544 and 550 and Nev. Rev. Stat. 112.220(2), Plaintiff may avoid the Transfers and may recover the property transferred or its value from Defendants or their immediate or mediate transferees, plus interest thereon at the maximum rate provided by law.

/ / /

/ / /

/ / /

52. If and to the extent the Court determines any of the Transfers did not occur during the Four Year Period within the meaning of Nev. Rev. Stat. 112.200, but rather occurred earlier in time, the Court should apply the principles of law and equity to allow the avoidance of the Transfers and recovery of property transferred, pursuant to Nev. Rev. Stat. 112.240.

**V.**

**SECOND CLAIM FOR RELIEF**

(Injunction Against Further Transfers – Against All Defendants)

[11 U.S.C. § 105(a), Federal Rule of Bankruptcy Procedure 7065, Federal Rule of Civil Procedure 65, Nev. Rev. Stat. 112.210 and Nevada Rule of Civil Procedure 65]

53. Plaintiff incorporates herein by reference the allegations in paragraphs 1 though 44, inclusive, and paragraphs 46 though 52, inclusive, as though fully set forth herein.

54. Plaintiff is informed and believes, and based thereon alleges, that Defendants have in their possession, or under their dominion and control, property which properly belongs to and is property of the estate of the Debtor herein.

55. Plaintiff is informed and believes, and based thereon alleges, that unless Defendants, and their agents, servants, and employees, are enjoined and restrained as thereinafter requested, the estate of the Debtor herein will suffer irreparable harm and injury, in that property of the Debtor will be concealed, diminished in value, wrongfully transferred to others, or otherwise made unavailable to Plaintiff on behalf of Debtor's estate.

56. By reason of the foregoing, and pursuant to 11 U.S.C. § 105(a), Federal Rule of Bankruptcy Procedure 7065, Federal Rule of Civil Procedure 65, Nev. Rev. Stat. 112.210 and Nevada Rule of Civil Procedure 65, Plaintiff is entitled to and hereby requests an order enjoining and restraining Defendants, and their agents, servants, and employees, from performing any and all acts to conceal, diminish in value, transfer to others, or otherwise make unavailable to Plaintiff any and all property of Debtor or his estate which is in their possession or under their dominion and control, and further enjoining and requiring Defendants and their agents, servants, and employees, to turnover and deliver all such property to Plaintiff, and to provide an accounting with respect to all such property.

**VI.**

**THIRD CLAIM FOR RELIEF**

(To Impose Constructive Trusts - Against All Defendants)

57. Plaintiff incorporates herein by reference the allegations in paragraphs 1 though 44, inclusive, paragraphs 46 though 52, inclusive, and paragraphs 54 though 56, inclusive, as though fully set forth herein.

58. Plaintiff is informed and believes, and based thereon alleges, that the circumstances under which Debtor transferred property to Defendants make it inequitable that the property should be retained by the Defendants holding legal title. These circumstances include, but are not limited to, the following:

a. Debtor fraudulently transferred the property to Defendants as provided by 11 U.S.C. § 544 and N.R.S. 112.180, as more fully set forth *supra*;

b. Notwithstanding the Transfers, Debtor continued to exercise ownership and control over the property transferred by, among other things, withdrawing funds from AAA Om, Om Sai Ram I, and Om Sai Ram II for his personal investments and personal legal representation in lawsuits unrelated to Defendants;

c. Notwithstanding the Transfers, Defendants did not exercise ownership and control over the property transferred.

59. Plaintiff is informed and believes, and based thereon alleges, that Debtor abused confidences and breached various duties owed to several creditors of the bankruptcy estate, including but not limited to the Patients, which render unconscionable the Defendants' acquisition and retention of the property Debtor transferred to Defendants.

60. By reason of the fraudulent and otherwise wrongful manner in which Defendants obtained and maintained their alleged right, claim, or interest in and to property of the Debtor, Defendants have no legal or equitable right, claim or interest therein.

61. By reason of the foregoing and to satisfy the demands of justice, the property that Debtor transferred to Defendants, together with any and all profits therefrom, should be impressed with a constructive trust for the benefit of Plaintiff and the Debtor's bankruptcy estate; individual

Defendants should be adjudged jointly and severally to be constructive trustees of any and all such property of Debtor wrongfully diverted and any and all profits derived therefrom; and Defendants should be required and directed to make full and complete restitution and restoration of all such property wrongfully diverted, together with any and all profits therefrom.

**VII.**

**FOURTH CLAIM FOR RELIEF**

(For Imposition of Equitable Liens - Against All Defendants)

62. Plaintiff incorporates herein by reference the allegations in paragraphs 1 though 44, inclusive, paragraphs 46 though 52, inclusive, paragraphs 54 though 56, inclusive, and paragraphs 58 through 61, inclusive, as though fully set forth herein.

63. Based on Defendants' improper receipt of Transfers as alleged in this Complaint, Plaintiff is entitled to impress Defendants' property with equitable liens to prevent unjust enrichment, to do justice in equity, to provide security for any and all monies owed, and to prevent an unfair result. Plaintiff is also entitled to sell Defendants' property to satisfy Defendants' indebtedness to the Debtor's estate.

**VIII.**

**FIFTH CLAIM FOR RELIEF**

(To Avoid Unjust Enrichment - Against All Defendants)

64. Plaintiff incorporates herein by reference the allegations in paragraphs 1 though 44, inclusive, paragraphs 46 though 52, inclusive, paragraphs 54 though 56, inclusive, paragraphs 58 through 61, inclusive, and paragraph 63 as though fully set forth herein.

65. Plaintiff is informed and believes, and based thereon alleges, that as a result of the Transfers, Defendants have been enriched to the detriment of Plaintiff and Debtor's bankruptcy estate under circumstances that would make it inequitable for them to retain the Transfers without the payment of the value of same.

66. For the forgoing reasons, Plaintiff is entitled to recover from Defendants damages on account of the Transfers plus interest thereon at the maximum legal rate.

/ / /

**IX.**

**SIXTH CLAIM FOR RELIEF**

(For Alter Ego Liability - Against All Defendants)

67. Plaintiff incorporates herein by reference the allegations in paragraphs 1 though 44, inclusive, paragraphs 46 though 52, inclusive, paragraphs 54 though 56, inclusive, paragraphs 58 through 61, inclusive, paragraph 63, and paragraphs 65 through 66, inclusive, as though fully set forth herein.

68. Plaintiff is informed and believes, and based thereon alleges, that at all times relevant hereto, each of the Defendants and Debtor were principals, agents, insiders, affiliates, managers, alter-egos, co-venturers, partners, sureties, guarantors, officers, directors or employees of the remaining Defendants and were at all times acting within the scope of such agency, affiliation, management, alter-ego relationship and/or employment; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each and every violation of Debtors' creditors' rights and the damages to Debtors' creditors proximately caused thereby.

69. Plaintiff is informed and believes, and based thereon alleges, that there exists and, at all times mentioned herein, existed a unity of interest and ownership between and among Defendants and Debtor, such that any individuality and/or separateness between Defendants and Debtor has ceased to exist.

70. Plaintiff is informed and believes, and based thereon alleges, that Defendants caused assets of the Debtor to be transferred to them without adequate consideration. Debtor contributed all of the capital to form AAA Om, Om Sai Ram I, and Om Sai Ram II. Plaintiff is informed and believes, and based thereon alleges, that the Daughters contributed no capital to AAA Om, Om Sai Ram I, and Om Sai Ram II—other than capital received as a gift from Debtor—and held their alleged interests in these entities on behalf of, or in trust for, Debtor.

/ / /

/ / /

/ / /

71. Plaintiff is informed and believes, and based thereon alleges, that Defendants were mere shells, instrumentalities and conduits through which Defendants carried on their business for Debtor's primary, if not sole, benefit. AAA Om, Om Sai Ram I, and Om Sai Ram II were controlled, dominated and operated by Debtor as his individual businesses and alter egos.

72. Plaintiff is informed and believes, and based thereon alleges, that the activities and business of AAA Om was carried out without the Daughters holding member meetings and without carrying out other activities and attributes of true and separate entity existence.

73. Plaintiff is informed and believes, and based thereon alleges, that no contemporaneous records or minutes of regular proceedings and meetings were maintained by Debtor, his Daughters, or AAA Om.

74. Plaintiff is informed and believes, and based thereon alleges, that AAA Om entered into personal transactions with the Debtor without the involvement, approval or oversight of its purported members, the Daughters.

75. Plaintiff is informed and believes, and based thereon alleges, that Defendants and Debtor intermingled their assets and Defendants obtained assets from the Debtor to suit their convenience and to evade payment of taxes, existing and anticipated creditors of Debtor, and other legitimate obligations.

76. Plaintiff is informed and believes, and based thereon alleges, that Defendants used their own assets and those of the Debtor for personal use, and obtained funds from the Debtor's business accounts for their own personal use.

77. Plaintiff is informed and believes, and based thereon alleges, that AAA Om, Om Sai Ram I, and Om Sai Ram II were without sufficient capital or assets to conduct a legitimate business.

78. The facts of the case are such that an adherence to the fiction of separate entities would, under the circumstances, sanction a fraud and/or promote injustice because creditors of the Debtor's estate will suffer injury.

79. Plaintiff is therefore entitled to a judgment against Defendants, jointly and severally, for the debts owed by Debtor in this bankruptcy case, in a sum according to proof at trial, plus interest at the maximum rate allowed by law and reimbursement of costs.

**X.**

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as to all claims for relief.

**XI.**

**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff prays for judgment against the Defendants as follows:

1. On the First Claim for Relief,

a. For a determination by the Court that the Transfers may be avoided and for recovery from Defendants or any immediate or mediate transferee of Defendants, of the property transferred or the value of such property, subject to proof at trial, together with interest as allowed by law from the date of each transfer;

2. On the Second Claim for Relief,

a. For an order enjoining and restraining Defendants, and their agents, servants, and employees, from performing any and all acts to conceal, diminish in value, transfer to others, or otherwise make unavailable to Plaintiff any and all property of the Debtor or his estate which is in their possession or under their dominion and control, and further enjoining and requiring Defendants, and their agents, servants, and employees, to turnover and deliver all such property to Plaintiff, and to provide an accounting with respect to all such property;

3. On the Third Claim for Relief,

a. For an order imposing a constructive trust over the property that Debtor transferred to Defendants, together with any and all profits therefrom, for the benefit of Plaintiff and the Debtor's bankruptcy estate; naming the individual Defendants, jointly and severally, as constructive trustees of any and all such property of Debtor wrongfully diverted and any and all profits derived therefrom; and requiring and directing Defendants to make full and complete restitution and restoration of all such property wrongfully diverted, together with any and all profits therefrom;

/ / /

/ / /

4. On the Fourth Claim for Relief,

a. For an order imposing an equitable lien on Defendants' property for the benefit of Plaintiff and Debtor's bankruptcy estate as security for any and all monies wrongfully obtained from Debtor; and requiring and directing Defendants to make full and complete restitution and restoration of all property wrongfully obtained, together with any and all profits therefrom, to Debtor's bankruptcy estate;

5. On the Fifth Claim for Relief,

a. For an order requiring and directing Defendants to make full and complete restitution and restoration of all property that comprised the Transfers, together with any and all profits derived therefrom, or the value of such property and profits;

6. On the Sixth Claim for Relief,

a. For a determination that Debtor is the alter-ego of AAA Om, Om Sai Ram I, and Om Sai Ram II; and

b. For a determination that AAA Om, Om Sai Ram I, and Om Sai Ram II are jointly and severally liable for the debts of the Debtor; and

7. On all Claims for Relief,

a. For an award of interest on the principal amount at the maximum legal rate and as allowed by law, together with costs of suit; and

b. For such other relief as the court deems just and equitable under the circumstances.

Dated: September 4, 2012

SULLIVAN, HILL, LEWIN, REZ & ENGEL
A Professional Law Corporation

By: */s/ Elizabeth E. Stephens*
James P. Hill
John R. Heisner
Elizabeth E. Stephens
Attorneys for Plaintiff, William A. Leonard, Jr., Chapter 7 Trustee